**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ABSOLUT FACILITIES MANAGEMENT, LLC, et al.,<br><br>                Debtors. | Chapter 11<br><br>Case No. 19-76260-ast<br>Case No. 19-76263-ast<br>Case No. 19-76267-ast<br>Case No. 19-76268-ast<br>Case No. 19-76269-ast<br>Case No. 19-76270-ast<br>Case No. 19-76271-ast<br>Case No. 19-76272-ast<br><br>(Jointly Administered) |
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>              Plaintiff,<br><br>- against -<br><br>ABSOLUT FACILITIES MANAGEMENT, LLC, ABSOLUT CENTER FOR NURSING AND REHABILITATION AT ALLEGANY, LLC, ABSOLUT CENTER FOR NURSING AND REHABILITATION AT AURORA PARK, LLC, ABSOLUT CENTER FOR NURSING AND REHABILITATION AT GASPORT, LLC, ABSOLUT AT ORCHARD BROOKE, LLC, ABSOLUT CENTER FOR NURSING AND REHABILITATION AT ORCHARD PARK, LLC, ABSOLUT CENTER FOR NURSING AND REHABILITATION AT THREE RIVERS, LLC, and ABSOLUT CENTER FOR NURSING AND REHABILITATION AT WESTFIELD, LLC,<br><br>              Defendants. | Adversary Proceeding No. 20-08055-ast<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS <u>ADVERSARY PROCEEDING</u>** |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

BACKGROUND .......................................................................................................................... 2

ARGUMENT ................................................................................................................................ 7

I.      LEGAL STANDARD ........................................................................................................ 7

II.     THE DECLARATORY JUDGMENT CLAIM SHOULD BE DISMISSED ..................... 8

        A.     There Is No Trust ................................................................................................... 9

        B.     The Disputed Funds are Not Removed from the Definition of Estate Property on Account of a Principal-Agent Relationship ............................................................ 13

III.    THE CLAIMS FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED....................... 14

CONCLUSION ............................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*2002 Lawrence R. Buchalter Alaska Trust v. Philadelphia Financial Life Assurance Co.*,
   96 F. Supp.3d 182 (S.D.N.Y. 2015) ...................................................................................... 7

*Amy Axelrod, Inc. v. Simon & Schuster Inc.*,
   No. 07-cv-891, 2007 WL 2412257 (S.D.N.Y. 2007) ............................................................ 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................... 7

*In re Balgobin*,
   490 B.R. 13 (Bankr. E.D.N.Y. 2013) ................................................................................... 10

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................... 7

*Bradt v. Woodlawn Auto Workers, F.C.U.*,
   757 F.2d 512 (2d Cir. 1985) .................................................................................................. 8

*In re Calpine Corp.*,
   No. 05-60200, 2008 WL 3154763 (Bankr. S.D.N.Y. 2008) ................................................... 8

*In re Chowaiki & Co. Fine Art Ltd.*,
   593 B.R. 699 (Bankr. S.D.N.Y. 2018) ................................................................................. 10

*In re Dewey & LeBoeuf LLP*,
   493 B.R. 421 (Bankr. S.D.N.Y. 2013) ................................................................................. 10

*In re Doman*,
   58 A.D.3d 862, 890 N.Y.S.2d 632 (2d Dep't 2009) ............................................................. 10

*In re Dreier LLP*,
   452 B.R. 391 (Bankr. S.D.N.Y. 2011) ................................................................................. 10

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) ............................................................................................................. 15

*First Central Financial Corp.*,
   377 F.3d 209 (2d Cir. 2004) ................................................................................................ 10

*Matter of Gagliardi*,
   55 N.Y.2d 109, 432 N.E.2d 774 (1982) ................................................................................. 9

*Greenfield Direct Response, Inc. v. ADCO List Mgmt. (In re Greenfield Direct Response, Inc.)*,
    171 B.R. 848 (Bankr. N.D. Ill. 1994) ................................................................................ 13

*In re Kent*,
    396 B.R. 46 (Bankr. D. Ariz. 2008) ................................................................................... 12

*Matter of Klosinski*,
    192 Misc.2d 714, 746 N.Y.S.2d 350 (Surrogate's Ct. Kings Co. 2002) ............................. 9

*LFD Operating, Inc. v. Ames Dep't Stores, Inc. (In re Ames Dep't Stores, Inc.)*,
    274 B.R. 600 (Bankr. S.D.N.Y. 2002) .............................................................................. 10

*Lockhart v. Garden City Bank & Tr. Co.*,
    116 F.2d 658 (2d Cir. 1940) .............................................................................................. 11

*McCarthy v. Dun & Bradstreet Corp.*,
    482 F.3d 184 (2d Cir. 2007) ................................................................................................ 7

*In re Pied Piper Casuals, Inc.*,
    50 B.R. 549 (Bankr. S.D.N.Y. 1985) .................................................................................. 8

*SEC v. Am. Bd. of Trade, Inc.*,
    654 F. Supp. 361 (S.D.N.Y. 1987) .................................................................................... 13

*In re Shulman Transport Enterprises, Inc.*,
    744 F.2d 293 (2d Cir. 1984) .............................................................................................. 13

*Votgel v. Palmer (In re Palmer)*,
    57 B.R. 332 (Bankr. W.D. Va. 1986) ................................................................................ 11

*In re Weeks*,
    106 B.R. 257 (Bankr. E.D. Okla. 1989) ............................................................................ 12

**<u>Statutes</u>**

11 U.S.C. § 541 ............................................................................................... 8, 9, 11, 12, 13

26 U.S.C. § 501 ............................................................................................................... 3

N.Y. E.P.T.L. § 7-1.17 ...................................................................................................... 9

N.Y. U.C.C. § 9-104 ..................................................................................................... 2, 5

N.Y. U.C.C. § 9-314 ..................................................................................................... 2, 5

**Rules**

Fed. R. Bankr. P. 7001 ................................................................................................................ 14

Fed. R. Civ. P. 12 ................................................................................................................... 1, 7

Fed. R. Civ. P. 65 ...................................................................................................................... 14

Fed. R. Civ. P. 67 ........................................................................................................................ 4

**Other Authorities**

Collier on Bankruptcy ¶ 541.04 (15th ed.) ................................................................................. 11

Collier on Bankruptcy ¶ 541.08 (15th ed.) ................................................................................. 13

Defendants submit this memorandum of law in support of their motion to dismiss the Complaint with prejudice, pursuant to Rule 12(b)(6).

## INTRODUCTION

The year before the commencement of their chapter 11 cases, the Defendants resolved claims brought against them by the Plaintiff Federal agency ("EEOC") by, among other things, agreeing to make future payments totaling $425,000 to the EEOC's designees (certain not-yet-identified current or former employees and/or a charity selected by the EEOC) in such specific, individual amounts as the EEOC might designate. Violating the deadline it had itself agreed to, the EEOC failed to designate any such payees before the commencement of Defendants' chapter 11 cases.

There is no dispute that Defendants' payment obligations to the EEOC's belatedly-noticed designees would be enforceable under applicable nonbankruptcy law. But the Defendants collectively owe tens of millions of dollars under applicable nonbankruptcy law to other creditors with equally valid claims. The EEOC seeks a 100-cents-on-the-dollar payout for its designated payees, but their designees' legitimate claims to payment do not have any priority over any other undisputed claims, in a case where general unsecured creditors have been projected to receive a minimal recovery. As is often the case in bankruptcy, there are in 20/20 hindsight any number of steps the EEOC could have taken to protect its designees' rights against those of other creditors in the event the Defendants became insolvent, but, as is also often the case in bankruptcy, the EEOC failed to do so here.

The EEOC notes that the Defendants set aside in a separate bank account (the "Account") funds sufficient to make the $425,000 in payments (the "Disputed Funds") and argues that, because they are held in a "segregated and clearly identifiable bank account" (Complaint ¶ 28), the Disputed Funds did not become property of Defendants' bankruptcy estates. The EEOC is reduced

1

to this argument because it failed to take any of the steps that were available to it pre-bankruptcy to protect the interests of its future designees to the Disputed Funds over those of other creditors, as for example by following the simple procedure outlined in N.Y. U.C.C. §§ 9-104 and 9-314 to perfect a security interest in a bank account. The EEOC's claims that the Disputed Funds are not estate property because Defendants hold such funds in trust (for unspecified beneficiaries not identified even by the EEOC as of the petition date) or that Defendants hold them as the agent for the EEOC, even though the EEOC had never claimed any ownership of the Disputed Funds, are not supported, under the governing law, by either the language of the document giving rise to Defendants' payment obligations or any other well-pleaded facts alleged in the Complaint.

## BACKGROUND

The EEOC commenced an action against Defendants on September 17, 2018 (almost a year prior to any of the Defendants filing voluntary petitions for relief), alleging that Defendants had discriminated against pregnant employees. (Complaint ¶¶16, 18.)

Those allegations were never adjudicated, as the parties engaged in settlement negotiations; and that month, the EEOC and Defendant Absolut Facilities Management, LLC ("AFM"), on behalf of itself and the other Defendants, and certain non-Defendant/Debtor affiliates, entered into a Consent Decree (included in Complaint Exhibit A), which became effective on or about October 18, 2018 ("Effective Date").[1]

---

[1] The Consent Decree defines "Effective Date" as "the date the Decree is entered by the Court." The Decision and Order approving the Consent Decree is dated October 18, 2018, but was not entered on the docket sheet until the next day. A copy of the docket sheet is annexed hereto as Exhibit 1.

The provisions of the Consent Decree relevant to this adversary proceeding are in Section VII(B) of the Consent Decree, titled "Monetary Relief to Claimants", and provide in relevant part:[2]

    1. Within twenty-one (21) days of the Effective Date, Defendants will pay … $425,000 … in monetary relief into a settlement fund and provide notice and proof of payment to the EEOC. The monetary relief will be distributed to Claimants allegedly subjected to unlawful employment practices on the basis of pregnancy or disability … at any time between December 9, 2014 and the Effective Date. Eligibility for a distribution and the amount of any distribution will be determined solely by the EEOC …

    2. Within sixty (60) days of the Effective Date, Defendants will provide the EEOC with information necessary to identify and contact Claimants, specifically including … An Excel spreadsheet [providing specified information].

    3. The EEOC will have eighteen (18) months from the Effective Date to identify Claimants who are entitled to a distribution from the settlement fund.

    4. Within six (6) months of receiving the information identified in [¶ 2], the EEOC will provide Defendants with a spreadsheet identifying Claimants who will receive payments from the settlement fund. The spreadsheet will include each Claimant's name, address and social security number, and will specify the amount that each Claimant will receive … Within thirty (30) days of receiving the spreadsheet … Defendants will mail the payments via certified mail to the address provided by the EEOC for each individual.

    5. After the initial distribution of payments pursuant to [¶ 4], the EEOC may continue to identify Claimants on a rolling basis until (a) the settlement funds have been exhausted; or (b) eighteen (18) months have elapsed from the Effective Date. The EEOC will identify any additional Claimants and Defendants will distribute any additional payments in the same manner as set forth in [¶ 4].

    6. Any settlement funds not distributed to Claimants by the end of the 18-month period will be remitted to a 501(c)(3) charitable organization approved by the EEOC whose mission is to advance the opportunities of women and/or individuals with disabilities in employment.

(Consent Decree § VII(B); *see also* Complaint ¶¶ 23-26.)

---

[2] The Consent Decree imposed numerous other obligations on Defendants and there is no allegation that they have failed to comply with any of those obligations either pre- or post-petition other than failing, post-petition, to make payments from the Disputed Funds that would have been prejudicial to their other creditors.

In other words, Defendants were expected to ultimately pay a total of $425,000 as directed by the EEOC, no more and no less, with none of that money going to the EEOC itself, but all of it going to some combination of "Claimants"[3] and/or a charity, with the identities of the Claimants or charity designated to receive payment not yet specified (and not yet determined by the EEOC) as of the date of the Consent Decree.

Separately, while money was to be placed by Defendants in a "settlement fund" pending the EEOC's subsequent designation of who it should be paid to in what amounts, the Consent Decree provides no specific requirements or guidance as to how that fund should be structured or maintained (not even an explicit requirement that it needed to be in a separate segregated bank account), and actual control of the fund was left completely with the Defendants themselves. In other words, the EEOC was to decide who should be paid what amounts from the fund but the EEOC was then to give instructions to the Defendants to make those payments. The EEOC did not seek, and did not receive, any control over the fund that would enable it to make those payments. Specifically:

- The EEOC did not require the Defendants to pay the $425,000 to the EEOC, for the EEOC to hold while the ultimate payees were being selected.
- The EEOC did not require the Defendants to pay the $425,000 to a third party (such as a law firm that could have deposited the funds in its client trust account), or to the Clerk (pursuant to Rule 67) to hold while the ultimate payees were being selected, with such neutral party having pre-committed to follow the EEOC's payment instructions.

---

[3] "Claimants" is defined as "individuals who were subjected to alleged unlawful employment practices" of a specified nature during a specified time frame. (Consent Decree p. 5.)

- The EEOC did not even seek or obtain a so-called "control agreement" with the Defendants and M&T Bank where the Account was maintained pursuant to N.Y. U.C.C. § 9-104(a)(2), which would have given the EEOC the right to direct the bank to make payments from the Account and a perfected security interest, pursuant to N.Y. U.C.C. 9-314.

The Consent Decree nowhere uses any words like "trust," "trustee" or "beneficiary," nor does it use the word "agent" outside of boilerplate phrases like "Defendants, their managers, officers, agents, and any other person or entity acting on behalf of Defendants."

The Complaint alleges (¶ 28) that on November 27, 2018, Defendants complied with the funding requirement of the Consent Decree by depositing $425,000 into the Account at M&T Bank. The Complaint separately alleges (¶ 27) that approximately two weeks prior a check for $425,000 had been received by AFM from one of its insurance carriers ("Chubb"), and insinuates (without expressly alleging) that that check was deposited in the Account. But Chubb was not a party to the Consent Decree, the Consent Decree did not specify or limit where the Defendants were to secure the funds to comply with it from, and indeed the Consent Decree did not condition the Defendants' payment obligations on actually obtaining funding in any amount from Chubb or any third-party. The Account is in the name of AFM. (Complaint ¶ 61.)

On December 17, 2018 (Complaint ¶¶ 29, 30), Defendants timely complied with their obligations under the Consent Decree to provide the EEOC with information necessary to identify and contact potential Claimants so that the EEOC could determine whether any particular potential Claimant should be designated to receive a payment and if so how much. Accordingly, the six-month time period specified in Section VII(B)(4) of the Consent Decree for the EEOC to designate at least an initial group of payees began to run on that date and expired on June 17, 2019. Had the

EEOC met that deadline, Defendants would have been obligated to make the payments so directed within thirty days, i.e. by July 17, 2019 (had the EEOC waited until the last possible day). That would have been well in advance of the petition date, which did not occur until September 10, 2019. (Complaint ¶ 35.)

The EEOC concededly did not meet the deadline the Consent Decree imposed, and indeed did not attempt to designate any payees until (Complaint ¶ 38) December 17, 2019, a full six months after the deadline and over three months after the petition date. When it did so, it ultimately designated only 37 Claimants as payees, out of over 4,000 employees the Defendants had identified to the EEOC as potential Claimants. (Complaint ¶¶ 30, 39.[4]) The Complaint does not allege that the EEOC sought or obtained an extension of the June 17, 2019 deadline to make its initial designations. While it notes in passing (Complaint ¶ 31) the impact of a five-week federal government shutdown in December 2018 and January 2019 it does not explain either how a five-week shutdown caused a six-month delay or why no modification of the Consent Decree was sought.

Thus, it is undisputed that as of the commencement of their chapter 11 cases, Defendants had not been informed of the identity of any individuals, or any charity, that the EEOC intended to instruct Defendants to make payments to pursuant to the Consent Decree.

---

[4]    The Complaint alleges that the EEOC concluded to its own satisfaction that these 37 Claimants had had their Federal statutory rights violated by Defendants, but in light of the settlement embodied in the Consent Decree there was no actual such adjudication and Defendants had no opportunity to notice and an opportunity to be heard with respect to the situation of any particular Claimant designated by the EEOC to receive a payment. Again, Defendants' obligation pursuant to the Consent Decree was to make payments to such persons as the EEOC might direct payments be made to without regard to any actual proof of liability of any of the Defendants to any such person.

Defendants' chapter 11 plan (Case No. 8:19-bk-76260-ast, Dkt. No. 560 ("Plan")) was confirmed on May 18, 2020 and became effective on May 20, 2020 (Dkt. Nos. 583, 595). The accompanying disclosure statement estimated allowed general unsecured claims totaling roughly $30 million, with a de minimis estimated future payout to that impaired class. (Dkt. No. 517, p. 6.)

## ARGUMENT

### I. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *accord Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When faced with a Rule 12(b)(6) motion, the court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, those factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The court may not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Further, where "a plaintiff alleges a claim based on a written instrument," if "the documents contradict the allegations of a plaintiff's complaint, the documents control and the Court need not accept as true the allegations in the complaint." *2002 Lawrence R. Buchalter Alaska Trust v. Philadelphia Financial Life Assurance Co.*, 96 F. Supp.3d 182, 199 (S.D.N.Y. 2015).

7

## II.     THE DECLARATORY JUDGMENT CLAIM SHOULD BE DISMISSED

It is black letter law that the Disputed Funds, as the balance as of the petition date of one of Defendants' bank accounts, are property of the estate under Bankruptcy Code section 541(a)(1) unless some exception applies.[5]  As noted above, the EEOC could have, but did not, follow the fairly simple process available under Article 9 of the N.Y. U.C.C. to obtain a perfected security interest in the Account.  Had it done so, the Disputed Funds would still be estate property, but the security interest would have assured the EEOC's designees a higher priority under the Bankruptcy Code and a full payout under the Plan.  But the EEOC did not do so, leaving it to make up after-the-fact arguments for why it should get the same result.

Count I of the Complaint seeks a declaratory judgment the Disputed Funds are excluded from the general definition, pursuant to section 541(d) and (b)(1), because AFM is holding the Disputed Funds in trust; or alternatively as agent for the EEOC.  Neither theory is supported by the allegations of the Complaint, and Count I should accordingly be dismissed.

---

[5]     The Complaint notes (¶¶ 36, 37) that Defendants' schedules of assets and liabilities did not explicitly list the Account as an asset.  But it is hardly a secret that the schedules filed in this case were incomplete and omissive in numerous particulars (for example, every non-priority, general unsecured claim listed on Schedule E/F was marked disputed, contingent or unliquidated, itself raising questions about their good faith preparation), and such an omission is not a binding concession that the unscheduled asset is not estate property, especially where, as here, treating it as such would simply create a windfall benefiting certain creditors at the expense of others.  *See also In re Calpine Corp.*, No. 05-60200, 2008 WL 3154763, at *7 (Bankr. S.D.N.Y. 2008) (denying request to invoke judicial estoppel based on schedules, in complex cases where, as here, the subject schedules included a disclaimer and the party seeking preclusion had not relied upon the schedules).

That the Disputed Funds in the Account may initially have been derived from a payment to one of Defendants by its insurance carrier is equally irrelevant, as noted above, because the specific source of funding was outside the scope of the Consent Decree.  Separately, however, it is also black letter law that insurance policies and proceeds thereof fall within the scope of the general definition of estate property under section 541(a)(1) and (a)(6).  *E.g.*, *In re Pied Piper Casuals, Inc.*, 50 B.R. 549, 551 (Bankr. S.D.N.Y. 1985) (citing *Bradt v. Woodlawn Auto Workers, F.C.U.*, 757 F.2d 512, 515-16 (2d Cir. 1985)).

### A. There Is No Trust

Section 541(d) excludes, from the general definition of estate property in section 541(a), property held in trust for the benefit of another as of the petition date.[6]

But there is no trust here, because the Consent Decree does not purport to create an express trust and did not operate under New York law to do so. The EEOC could have insisted on such provisions before settling its lawsuit against Defendants, but did not do so. The Consent Decree does not state that the undefined "settlement fund" is to be a structured as a trust, and does not use the word "trust" or any other words like "trustee" or "beneficiary." Crucially, it does not comply with the formalities required by N.Y. E.P.T.L. § 7-1.17, which requires a trust to be established by a writing "executed and acknowledged by the person establishing such trust … in the manner required by the laws of this state for the recording of a conveyance of real property [i.e. by a signature witnessed by a notary public] or, in lieu thereof, executed in the presence of two witnesses who shall affix their signatures to the trust instrument." *See Matter of Klosinski*, 192 Misc.2d 714, 746 N.Y.S.2d 350 (Surrogate's Ct. Kings Co. 2002) (describing the 1997 adoption of this statute and contrasting it with prior New York law that required no particular formalities and "no specific language" to create an inter vivos trust). Even before New York required such formalities, however, it was well-established that the "creation of a trust requires that there be a clear intent." *Matter of Gagliardi*, 55 N.Y.2d 109, 115, 432 N.E.2d 774 (1982). When the documents alleged to have established a trust exhibit "ambiguity and equivocation," it "cannot be said that a trust was intended." *Id.*

---

[6] Section 541(d) provides: "Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest … becomes property of the estate … only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."

Moreover, under New York law, "[a] valid express trust requires (1) a designated beneficiary, (2) a designated trustee, (3) a fund or other property sufficiently designated or identified to enable title of the property to pass to the trustee and (4) actual delivery of the fund or property, with the intention of vesting legal title in the trustee." *In re Dreier LLP*, 452 B.R. 391, 420 (Bankr. S.D.N.Y. 2011) (quoting *In re Doman*, 58 A.D.3d 862, 863, 890 N.Y.S.2d 632, 634 (2d Dep't 2009)). *See also LFD Operating, Inc. v. Ames Dep't Stores, Inc. (In re Ames Dep't Stores, Inc.)*, 274 B.R. 600, 623 (Bankr. S.D.N.Y. 2002) (similar).[7]

The Complaint fails to plead these required elements, other than arguably the existence of "sufficiently designated" property. Lack of intent to form a trust has already been addressed, and is especially striking here where the assets were not conveyed to a third party but, on the EEOC's apparent theory would have been conveyed by AFM as settlor to AFM as trustee by moving its own money from one pocket to another. But that just highlights another fatal flaw in the EEOC's allegations. Who is the designated trustee of the alleged trust? The Complaint does not even explicitly allege this. One might think it would have to be AFM, as holder (Complaint ¶ 61) of legal title to the Account, but under the Consent Decree, AFM lacks any of the discretionary power a trustee would be expected have to determine how best to use the supposed trust's assets to benefit the (unidentified) beneficiaries of the supposed trust. AFM's

---

[7] The equitable remedy of constructive trust is unavailable here, as its key purpose is to prevent unjust enrichment. *In re Chowaiki & Co. Fine Art Ltd.*, 593 B.R. 699, 718-19 (Bankr. S.D.N.Y. 2018). It is well established "that th[e] principle—that the existence of a written agreement precludes a finding of unjust enrichment—also applies to constructive trust claims." *First Central Financial Corp.*, 377 F.3d 209, 213 (2d Cir. 2004). In any event, it is difficult to see how denial of a constructive trust remedy would unjustly enrich AFM. Its Plan "has been confirmed and become effective. All estate property is being distributed to [its] creditors according to the waterfall in the confirmed plan. Imposing a constructive trust … would reduce recoveries by … unsecured creditors; it would not enrich [AFM]." *In re Dewey & LeBoeuf LLP*, 493 B.R. 421, 434 (Bankr. S.D.N.Y. 2013). The remedy of resulting trust is likewise unavailable. *In re Balgobin*, 490 B.R. 13, 27-28 (Bankr. E.D.N.Y. 2013).

role was simply to make such payments to such payees as the EEOC might direct, a purely ministerial role with nothing "fiduciary" about it, and the conclusory allegation (Complaint ¶ 65) that "the parties created a fiduciary relationship" does not make it so. *See Amy Axelrod, Inc. v. Simon & Schuster Inc.*, No. 07-cv-891, 2007 WL 2412257, at *7 (S.D.N.Y. 2007) (under New York law, "a conventional business relationship without more is not converted into a fiduciary relationship by mere allegation") (quotations and citations omitted). To the contrary, it is the EEOC that has the right under the Consent Decree to carry out what would seem to be the core role of a trustee here—determining who should receive payments and in which amounts—but the EEOC concededly never took possession of or legal title to the Disputed Funds.

And who are the beneficiaries of the supposed trust? Those entitled to payment were not selected by the EEOC (or at least not identified by the EEOC to the Defendants) until months *after* the petition date—due in large part to the EEOC's refusal to meet the deadlines imposed by the Consent Decree. But in order for there to have been beneficial title to the Disputed Funds in the beneficiaries of the supposed trust, those beneficiaries needed to be identified as of the petition date (even if all other elements of an express trust were sufficiently alleged to be present here, which they are not), since that is the crucial date for determining whether the Disputed Funds are or are not property of the Defendants' bankruptcy estates. *Votgel v. Palmer (In re Palmer)*, 57 B.R. 332, 333 (Bankr. W.D. Va. 1986) (citing Collier on Bankruptcy ¶ 541.04 (15th ed.) and *Lockhart v. Garden City Bank & Tr. Co.*, 116 F.2d 658 (2d Cir. 1940)) ("Section 541 clearly establishes that the estate is created when the petition is filed. This date is the critical time as of which the property comprising the estate is to be determined and the rights of others connected with the proceeding adjusted"). To the extent the Complaint asserts (¶ 62) that all 4,000 of the names provided by Defendants to the EEOC were trust beneficiaries when fewer than 1% of them

11

were, following the EEOC's investigation, deemed qualified to receive payment (Complaint ¶ 39) and over 80% of the 4,000 names provided to the EEOC by the Defendants were deemed by the EEOC not to even "qualif[y] as potential Claimants under the terms of the Consent Decree" (Complaint ¶ 33), that simply underscores that the EEOC's position is untenable.[8]  That the EEOC ultimately found over 99% over those individuals unqualified to receive payment confirms that that much larger universe were never beneficiaries of the supposed trust in the first place, just as the fact that the EEOC, not AFM or any other Defendant, was the one with the authority to make that determination confirms that neither AFM nor any other Defendant was a trustee.  Accordingly, the factual allegations of the Complaint do not give rise to a plausible inference that the Disputed Funds were, as of the petition date, held in trust.

To the extent that the term "settlement fund" in the Consent Decree, or any other provision in Section VII(B) (Monetary Relief to Claimants, quoted above) or the Decision and Order, can be construed as prohibiting the transfer of the Disputed Funds from AFM to its bankruptcy estate by operation of section 541(a), such that the funds can then be applied to creditors' claims in accordance with the priority scheme under the Plan, such restriction would plainly be unenforceable under section 541(c)(1)(A). *E.g.*, *In re Kent*, 396 B.R. 46, 57 (Bankr. D. Ariz. 2008) ("Debtors' right to payment under the Annuities became property of the estate by virtue of § 541(c)(1)(A), notwithstanding the anti-alienation clauses in the Annuities"); *In re Weeks*, 106 B.R. 257, 260 (Bankr. E.D. Okla. 1989) (transfer restriction under regulations promulgated under ERISA did not prevent debtor's interest in retirement and thrift account from becoming estate property).

---

[8]     The Complaint nowhere alleges that Defendants were ever told either pre- or post-petition which 700 of the 4,000 names the EEOC considered to be sufficiently plausible as "potential Claimants" to follow up on.

B.     **The Disputed Funds are Not Removed from the Definition of Estate Property on Account of a Principal-Agent Relationship**

There is no dispute that, "if property is in the debtor's hands as agent, the property or proceeds therefrom is not treated as property of the debtor's bankruptcy estate." *Ames*, 274 B.R. at 614.[9] But as that case makes clear:

> A party who merely has possession of the property of another and, although authorized to deal with that property, is subject to control by its owner, is an agent of the owner. A trustee, however, holds legal or equitable title to the property placed in his possession and may or may not be subject to the beneficiary's control.

*Id*. at 617 (quoting *SEC v. Am. Bd. of Trade, Inc*., 654 F. Supp. 361, 366 (S.D.N.Y. 1987)).

In other words, an agent in the relevant sense has temporary *possession* of property on behalf of the property's owner, without legal *title* to that property, which remains in its owner. The property "in the debtor's hands as agent" is thus not property of the debtor's bankruptcy estate (and outside the scope of 541(a)) precisely because legal title is in the owner whose agent the debtor is. This is confirmed by *In re Shulman Transport Enterprises, Inc.*, 744 F.2d 293, 296 (2d Cir. 1984), where the contract whose terms the Second Circuit ultimately decided did not actually govern the situation (given the way the parties had dealt with each other in practice) at least recited that when the debtor as agent for various airlines received payment from customers those payments were, in the debtor's hands, the property of the airlines. *See also Greenfield Direct Response, Inc. v. ADCO List Mgmt. (In re Greenfield Direct Response, Inc.)*, 171 B.R. 848, 858 (Bankr. N.D. Ill. 1994) (citing Collier on Bankruptcy ¶ 541.08[2] (15th ed.)) ("Property held by a

---

[9]     The EEOC invokes section 541(b)(1) for the proposition that the definition of property of the estate "does not include … property over which the debtor is … agent." (Complaint ¶ 56.) However, section 541(b)(1) only excludes "any power [not property] that the debtor may exercise solely for the benefit of an entity other than the debtor." The Advisory Committee Notes state that this subsection is intended to cover the "power of appointment," such as under a will or trust document.

debtor as agent does not become property of the estate, as it belongs to someone else, usually the principal").

The Consent Decree here includes no such provision providing that the Disputed Funds, at least prior to the point at which the EEOC communicates payment instructions to the Defendants, are property of anyone other than the Defendants. To the contrary, the Complaint expressly alleges (¶ 61) that legal title to the Disputed Funds is held by AFM, meaning the funds cannot be excluded from estate property on the agency theory. And again, who would the "owner" of the Disputed Funds be for whom AFM would be holding the funds as "agent"? It is the EEOC who has the right under nonbankruptcy law to direct AFM, but the EEOC does not claim to own the Disputed Funds; and indeed the provisions of the Consent Decree make clear that the EEOC is to direct disbursement of 100% of those funds to third parties it designates (whether Claimants or charities) without taking any of it for itself.

## III. THE CLAIMS FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED

Counts II and III, both seeking positive injunctive relief directing AFM to distribute the Disputed Funds in accordance with the EEOC's instructions, per the Consent Decree, should also be dismissed.[10]

Putting aside that the requested relief is premised on the false assumption that the Disputed Funds are not estate property, the Complaint fails to plead the required elements for injunctive relief. A permanent injunction may issue only if the party seeking the same demonstrates: "(1)

---

[10] Count II (titled "Specific Performance of Prepetition Obligations") seeks relief under Rule 7001(1), whereas Count III (titled "Injunctive Relief") seeks relief under Rule 65 and 7001(7). Rule 7001 does not itself afford relief, but rather merely designates those proceedings which must be brought as adversary proceedings as opposed to contested maters. Moreover, the injunctive relief sought is not "a proceeding to recover money or property" within the meaning of Rule 7001(1) because inter alia the EEOC is asking for the Disputed Funds to be distributed to others per the Consent Decree.

that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

The irreparable injury requirement is not satisfied because the Plan *already* enjoins the Defendants and Plan Administrator from distributing the Disputed Funds without a judicial determination as to Count I, except as otherwise agreed by the parties. (Plan § 8.8.)  Indeed, this provision of the then-proposed Plan is expressly referenced in the Complaint, although the Plan had not yet been confirmed as of the filing of the Complaint. (Complaint p. 15, n. 2.)  Whatever else might have been said about the claims for injunctive relief, confirmation of the Plan means they have been definitively overtaken by events.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated:  July 3, 2020                                              AMINI LLC
        New York, New York

                                                                  /s/ Jeffrey Chubak
                                                                  John W. Brewer
                                                                  Jeffrey Chubak
                                                                  131 West 35th Street, 12th Floor
                                                                  New York, New York 10001
                                                                  (212) 490-4700
                                                                  jbrewer@aminillc.com
                                                                  jchubak@aminillc.com
                                                                  *Attorneys for the Defendants*