**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRCT OF NEW YORK**

| | | |
|---|---|---|
| _____ ) | Chapter 11 | |
| ) | | |
| In re: ) | Case No. 19-76260-ast | |
| ) | Case No. 19-76263-ast | |
| ) | Case No. 19-76267-ast | |
| Absolut Facilities Management, LLC, *et al.* ) | Case No. 19-76268-ast | |
| ) | Case No. 19-76269-ast | |
| Debtors. ) | Case No. 19-76270-ast | |
| ) | Case No. 19-76271-ast | |
| ) | Case No. 19-76272-ast | |
| _____ ) | (Jointly Administered) | |
| ) | | |
| EQUAL EMPLOYMENT OPPORTUNITY ) | | |
| COMMISSION, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | Adversary Proceeding | |
| ) | No. 20-08055-ast | |
| ABSOLUT FACILITIES MANAGEMENT, LLC, ) | | |
| ABSOLUT CENTER FOR NURSING AND ) | | |
| REHABILITATION AT ALLEGANY, LLC, ABSOLUT ) | | |
| CENTER FOR NURSING AND REHABILITATION ) | | |
| AT AURORA PARK, LLC, ABSOLUT CENTER ) | | |
| FOR NURSING AND REHABILITATION AT ) | | |
| GASPORT, LLC, ABSOLUT AT ORCHARD ) | | |
| BROOKE, LLC, ABSOLUT CENTER FOR NURSING ) | | |
| AND REHABILITATION AT ORCHARD PARK, LLC ) | | |
| ABSOLUT CENTER FOR NURSING AND ) | | |
| REHABILITATION AT THREE RIVERS, LLC ) | | |
| and ABSOLUT CENTER FOR NURSING AND ) | | |
| REHABILITATION AT WESTFIELD, LLC, ) | | |
| ) | | |
| Defendants. ) | | |
| _____) | | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS PURSUANT TO 12(b)(6)**

## **<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ................................................................. ii

PRELIMINARY STATEMENT ......................................................... 1

BACKGROUND .......................................................................... 3

ARGUMENT- EEOC STATES A CLAIM FOR A DECLARATION THAT THE
SETTLEMENT FUNDS ARE NOT PROPERTY OF THE STATE.................................... 4

    I.       LEGAL STANDARD PURSUANT TO FED. R. CIV.P. 12(b)(6) ............... 4

    II.     THE SETTLEMENT FUNDS WERE NEVER IDENTIFIED AS
           AN ASSET IN THE BANKRUPTCY PROCEEDINGS .............................. 5

    III.    DEFENDANTS DO NOT HAVE A LEGAL OR EQUITABLE
           INTEREST IN THE SETTLEMENT FUNDS SUCH THAT
           THEY ARE PROPERTY OF THE ESTATE.................................................. 7

           A.  The Settlement Funds are Compromised Solely of Insurance Proceeds. . 7

           B.  The Settlement Funds Constitute Trust Funds.......................................... 11

                  i.     The Settlement Funds are not property of the estate because
                       they are held in an express trust for the benefit of  the EEOC
                       Claimants  ................................................................... 12

                  ii.    The Settlement Funds are not property of the estate because
                       they are held in constructive trust for the benefit of the
                       EEOC Claimants.......................................................... 18

           C.  DEFENDANTS HOLD THE SETTLEMENT FUNDS
              AS EEOC'S AGENT ................................................................. 21

    IV.    INJUNCTIVE RELIEF SHOULD BE GRANTED TO
           PREVENT DEFENDANTS' DIMINISHMENT OF THE
           SETTLEMENT FUNDS................................................................... 23

CONCLUSION................................................................................ 24

## **TABLE OF AUTHORITIES**

## **CASES**

*Agudas Chasidei Chabad of United States. v. Gourary*, 833 F.2d 431 (2d Cir. 1987)................. 15

*In re Ames Dep't Stores, Inc.*, 274 B.R. 600, 624 (Bankr. S.D.N.Y. 2002) ........................... 16, 22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 4

*Begier v. I.R.S.*, 496 U.S. 53 (1990)............................................................................................ 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 4

*Bradt v. Woodlawn Auto Workers, F.C.U.*, 757 F.2d 512 (2d Cir. 1985) ..................................... 9

*Brass v. Am. Film Tech., Inc.*, 987 F.2d 142 (2d Cir. 1993)......................................................... 5

*Caballero v. Anselmo*, 720 F. Supp. 1088 (S.D.N.Y. 1989)........................................................ 12

*Cadle Co. v. Mangan (In re Flanagan)*, 503 F.3d 171 (2d Cir. 2007) ........................................ 21

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
    598 F.3d 30 (2d Cir. 2010).................................................................................................... 23

*Clark v. All Acquisition LLC*, 886 F.3d 261 (2d Cir. 2018)........................................................... 6

*Corporate Fin. v. Fidelity Nat'l Title Ins. Co. (In re Corporate Fin., Inc.)*,
    221 B.R. 671 (Bankr. E.D.N.Y. 1998).............................................................................. 18, 20

*Dzikowski v. NASD Regulation, Inc.*, 247 B.R. 867 (S.D. Fla. 2000) ......................................... 15

*Entegra Power Grp. v. Dewey & Leboeuf LLP (In re Dewey & Leboeuf LLP)*,
    493 B.R. 421 (Bankr. S.D.N.Y. 2013)........................................................................ 19, 20, 21

*Estate of Arthur Solomon, 1997* NYLF LEXIS 2064 (Sur. Ct. Kings Cty. 1997) . . . . . . 12

*Fishbein v. Miranda*, 670 F. Supp. 2d 264 (S.D.N.Y. 2009)......................................................... 5

*Geltzer v. Balgobin (In re Balgobin)*,  490 B.R. 13 (Bankr. E.D.N.Y. 2013) ............................. 20

*Gowan v. Patriot Group, LLC (In re Dreier)*, 452 B.R. 391 (Bankr. S.D.N.Y. 2011).......... 13, 16

*Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51 (5th Cir. 1993).................................. 8, 10

*In re Brunswick Hosp. Center Inc.*, 156 B.R. 896 (Bankr. E.D.N.Y. 1993)............... 14, 16, 17, 18

*In re Cabrini Medical Center*,
    Bankr. No. 09-14398 (AJG), 2012 WL 527711 (Bankr. S.D.N.Y. Feb. 16, 2012) ................. 17

*In re Columbia Gas Sys.*, 997 F.2d 1039 (3d Cir. 1993) ................................................. 17

*In re Denario*, 267 B.R. 496 (Bankr. N.D.N.Y. 2001) ..................................................... 9

*In re Doman*, 68 A.D.3d 862, 890 N.Y.S.2d 632 (2d Dep't 2009)..................................... 12

*In re Dreier*, 2016 WL 3920358 (S.D.N.Y. July 15, 2016).............................................. 20

*In re Dewey & Lefoueuf LLP, 493 B.R. 421  (Bankr. S.D.N.Y. 2013)*............................. 21

*In re E.D.B. Constr. Corp.*,
    No. 11-76129-REG, 2013 WL 6183849 (Bankr. E.D.N.Y. Nov. 26, 2013) ............................ 11

*In re Einhorn,* 59 B.R. 179 (Bankr. E.D.N.Y. 1986)....................................................... 17

*In re Gagliardi*, 55 N.Y. 109 (1982)............................................................................... 15

*In re Hanlon*, 169 A.D.3d 1039 (2d Dep't 2019) ............................................................ 16

*In re Joliet-Will Cty. Cmty. Action Agency*, 847 F.2d 430 (7th Cir. 1988)..................... 12

*In re Klosinski*, 192 Misc.2d 714 (Sur. Ct. Kings Cty. 2002)......................................... 12

*In re Matamoros*, 605 B.R. 600 (Bankr. S.D.N.Y. 2019)......................................... 12, 19

*In re Penn Cent. Transp. Co.*, 486 F.2d 519 (3d Cir. 1973) ........................................... 17

*In re Pied Piper Casuals, Inc.*, 50 B.R. 549 (Bankr. S.D.N.Y. 1985) ............................. 9

*In re Piel*, 10 N.Y.3d 163 (2008) ................................................................................... 21

*In re Purpura*, 170 B.R. 202 (Bankr. E.D.N.Y. 1994) .................................................... 2

*In re Scanlon*, 279 F 3d. 1195 (11th Cir. 2001)............................................................. 15

*In re Shulman Transp. Enter., Inc.*, 744 F.2d 293, 295 (2d Cir. 1984)...................... 16, 21

*In re Singh*, 434 B.R. 298 (Bankr. E.D.N.Y. 2010) ...................................................................... 19

*In re Stein & Day Inc.*, 80 B.R. 297 (Bankr. S.D.N.Y. 1987) ................................................. 11, 21

*Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46 (Bankr. S.D.N.Y. 1999) ............................................. 6

*Landry v. Exxon Pipeline Co. Mendoza Marine, Inc.*,
    260 B.R. 769, 786 (Bankr. M.D. L.a 2001) ............................................................ 8, 9, 10, 21

*Lawski v. Frontier Ins. Grp., LLC (In re Frontier Ins. Grp.)*,
    585 B.R. 685 (Bankr. S.D.N.Y. 2018) .......................................................................................... 6

*LFD Operating, Inc. v. Ames Dep't Stores, Inc.*,
    No. 02 Civ. 6271, 2004 WL 1948754 (S.D.N.Y. Sept. 1, 2004) ............................................. 16

*Martin v. Funk*, 75 N.Y. 134 (1878) .............................................................................................. 16

*Miller v. Schloss*, 218 N.Y. 400 (1916) ........................................................................................ 19

*Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506 (2d Cir. 2005) ..................................... 23

*Mullins v. City of New York,* 626 F.3d 47 (2d Cir. 2010) ............................................................. 23

*New Hampshire v. Maine*, 532 U.S. 742 (2001) .............................................................................. 6

*Ochs v. Lipson (In re First Cent. Fin. Corp.)*,  238 B.R. 9 (Bankr. E.D.N.Y. 1999) ................. 8, 9

*Pani v. Empire Blue Cross Blue Shield,*  152 F.3d 67 (2d Cir. 1998) ........................................... 5

*Perez v. Hawk*, 302 F. Supp. 2d 9 (E.D.N.Y. 2004) ...................................................................... 4

*Rahman v. Schriro*, 22 F. Supp. 3d 305 (S.D.N.Y. 2014) ............................................................. 5

*Robinson v. Concentra Health Servs., Inc.,* 781 F.3d 42 (2d Cir. 2015) ...................................... 5

*Romeo v. FMA Alliance, Ltd.*, No. 15-cv-6524 (ADS)(ARL),
    2016 WL 3647868 (E.D.N.Y. June 30, 2016) ........................................................................ 11

*Rosen v. Chowaiki & Co. Fine Art (In re Chowaiki & Fine Art Ltd.),*
    593 B.R. 699 (Bankr. S.D.N.Y. 2018) ..................................................................................... 20

*SEC v. Am. Bd. of Trade, Inc.*, 654 F. Supp. 361 (S.D.N.Y. 1987) .............................................. 22

*Silverman v. H.I.L. Assocs. (In re Allou Distribs., Inc.)*, 387 B.R. 365 (Bankr. E.D.N.Y. 2008) .. 5

*Simonds v. Simonds*, 45 N.Y.2d 233 (1978) ................................................................................ 19

*Superintendent of Ins. v. First Cent. Fin. Corp. (In re First Cent. Fin. Corp.)*,
    269 B.R. 481 (Bankr. E.D.N.Y. 2001)................................................................................ 16, 22

*T&B Scottdale Contractors, Inc. v. United States*,
    866 F.2d 1372 (11th Cir. 1989) ............................................................................................ 15

*Tarshis v. Riese Org.*, 211 F. 3d 30 (2d Cir. 2000)......................................................................... 4

*United States v. Coluccio*, 51 F.3d 337 (2d Cir. 1995)................................................................. 19

*Wadd v. Hazelton*, 137 N.Y. 215 (1893)...................................................................................... 12

*White v. Clark, No.* 12-CV0986, 2012 WL 5877160 (N.D.N.Y. Nov 20, 2012) ......................... 23

*Yonkers Bd. of Educ. v. Richmond Children's Ctr., Inc.*, 58 B.R. 980 (S.D.N.Y. 1986).............. 21

## **STATUTES**

11 U.S.C. § 521(a)(1)(B)(i) ........................................................................................................ 11

11 U.S.C. § 541(b) ....................................................................................................................... 17

N.Y. E.P.T.L. §7-1.17 (McKinney 2019) .................................................................................... 17

N.Y. E.P.T.L. § 1-2.20 ................................................................................................................. 17

## **RULES**

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... passim

## PRELIMINARY STATMEMENT

Plaintiff United States Equal Opportunity Employment Commission ("EEOC") submits this memorandum of law in opposition to Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  At issue in this adversary proceeding is the status of the $425,000 settlement fund created by Defendants in November 2018 pursuant to a court-ordered Consent Decree to be distributed to the claimants identified by the EEOC as allegedly harmed by Defendants' discriminatory practices, with any remainder going to a charitable organization approved by the EEOC, whose mission is to advance employment opportunities for women or individuals with disabilities.

Defendants do not dispute that, pursuant to Consent Decree, they deposited the sum of $425,000 into a separate M&T bank account and thus established the Settlement Fund.   Indeed, pursuant to the Chapter 11 Plan, which this Court confirmed on May 18, 2020 as feasible even without accounting for the $425,000, Defendants admitted that they are still holding the $425,000 settlement funds in a segregated account.  *See* Bankr. Docket Nos. 560; 583; 687, at 71.  However, they now claim that by filing their bankruptcy petition almost ten months after establishment of the Settlement Fund, the entire $425,000, the express purpose of which is to compensate the victims of Defendants' unlawful discriminatory employment practices, should be used to pay their creditors instead.

However, the Settlement Fund is not property of Defendants' bankruptcy estate and cannot be used for any other purpose other than for the benefit of the intended victims.  Although the bank account holding the $425,000 in settlement funds bears Defendants' name, Defendants have no legal or equitable claim to the funds themselves, which could therefore not inure to the benefit of the estate.  Notably, the $425,000 was funded exclusively with insurance proceeds and

was not comingled with any of Defendants' own operating monies.  Indeed, *only* the EEOC determined *who* would receive disbursements, *how much* they would receive, and how those amounts would be taxed; Defendants did not control *when* the payments would be made or *how* they would be sent; any funds remaining would go to a charity of EEOC's choice, *not* to the Defendants.

Despite this, in their memorandum of law in support of their motion, Defendants spend a significant portion of their argument musing on other ways the EEOC and Defendants could have structured their settlement agreement so as to "avoid" what they apparently deem the perils of bankruptcy.  However, the parties did not need to take any of the actions now suggested by Defendants, because the terms of the court-ordered Consent Decree clearly set forth the rights and obligations of both EEOC and Defendants, obligations that are not nullified simply by the filing of a bankruptcy petition.  Indeed, "[t]he rights of a debtor in property are not expanded or enlarged upon the filing of a bankruptcy petition"[1] and Defendants could not use the Settlement Fund to pay their creditors before filing for bankruptcy, and they cannot do so now.

EEOC's allegations in the Complaint, coupled with the attached Consent Decree (Ex. A) and initial evidence that the Settlement Fund is comprised solely of insurance proceeds (Ex. B), more than plausibly state a claim for a declaration that the $425,000 in settlement funds is not property of the bankruptcy estate.  Accordingly, the EEOC respectfully requests that the Court deny Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  To the extent the Court deems EEOC's claims not well-pleaded, EEOC requests leave to amend the Complaint at no prejudice to Defendants who have been on notice of the claims since at least December 2019.

---

[1] *In re Purpura*, 170 B.R. 202, 208 (Bankr. E.D.N.Y. 1994).

## BACKGROUND

As alleged in the Complaint, on September 13, 2018, the EEOC commenced an action in the United States District Court, Western District of New York against Defendants under the ADA and Title VII to correct their unlawful employment practices on the basis of disability and pregnancy. Complaint ¶ 1.  On September 24, 2018, the EEOC and Defendants agreed to resolve the litigation by way of a proposed Consent Decree, which the Court approved by Order dated October 18, 2018.  *Id.* ¶¶ 21-22; Exhibit A.  The parties agreed that Defendants "will pay . . . $425,000 in monetary relief into a settlement fund" "that will be distributed to Claimants [hereinafter "EEOC Claimants"] allegedly subjected to unlawful employment practices on the basis of pregnancy or disability . . . ." (hereinafter "the Settlement Funds"). *Id.* ¶¶ 23-24.   In November 2018, Defendants deposited the sum of $425,000 in a separate bank account with M&T Bank, account number -7673 (hereinafter "the Settlement Account") (together with the Settlement Funds, the "Settlement Fund").  *Id.* ¶ 28.  The $425,000 was paid directly by Defendants' insurance carrier, Chubb Insurance.  *Id.* ¶ 27; Exhibit B.

The Consent Decree directed that "[e]ligibility for a distribution and the amount of any distribution will be determined solely by the EEOC in its discretion."  *Id.* ¶ 24.   It also provided that "[t]he EEOC will have eighteen (18) months from the Effective Date [October 18, 2018] to identify Claimants who are entitled to a distribution from the settlement fund," and so the EEOC had until April 2020 to identify these claimants.  *Id.* ¶ 24. It further provided that once the Claimants were identified, "Defendants will mail the payments via certified mail to the address provided by the EEOC for each individual."  The Consent Decree required that "[a]ny settlement funds not distributed to Claimants by the end of the 18-month period will be remitted to a 501(c)(3)

charitable organization approved by the EEOC whose mission is to advance the opportunities of women and/or individuals with disabilities in employment." *Id.* ¶ 26.

Pursuant to the Consent Decree, the EEOC sought release of the Settlement Funds to the EEOC Claimants in December 2019. *Id.* ¶ 38. Defendants refuse to release the Settlement Funds to the EEOC Claimants and have continued to take the position that the Settlement Funds became general property of the bankruptcy estate by virtue of the filing of the bankruptcy petition.

<u>**ARGUMENT**</u>

**EEOC STATES A CLAIM FOR A DECLARATION THAT THE
SETTLEMENT FUNDS ARE NOT PROPERTY OF THE ESTATE**

**I.    LEGAL STANDARD PURSUANT TO FED. R. CIV. P. 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully"; stating a facially plausible claim requires pleading facts that enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Thus, the factual allegations pleaded "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Perez v. Hawk*, 302 F. Supp. 2d 9, 16 (E.D.N.Y. 2004) (Spatt, J.), citing *Tarshis v. Riese Org.*, 211 F. 3d 30, 35 (2d Cir. 2000).

"In deciding a motion to dismiss under Rule 12(b)(6), the Court may refer 'to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which

judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Fishbein v. Miranda*, 670 F. Supp. 2d 264, 271 (S.D.N.Y. 2009) (quoting *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)). "The court may also rely on matters of public record, such as judicial documents and official court records, in deciding whether to dismiss a complaint." *Rahman v. Schriro*, 22 F. Supp. 3d 305, 311 (S.D.N.Y. 2014) (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998)).

The Court may grant leave to amend a complaint when matters raised in the amended complaint relate back to the original allegations or claims.  "The central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading.  Where the amended complaint does not allege a new claim but renders prior allegations more definite and precise, relation back occurs." *Silverman v. H.I.L. Assocs. (In re Allou Distribs., Inc.)*, 387 B.R. 365, 387 (Bankr. E.D.N.Y. 2008) (internal quotations and citations omitted).

## II.    THE SETTLEMENT FUNDS WERE NEVER IDENTIFIED AS AN ASSET IN THE BANKRUPTCY PROCEEDINGS

As an initial matter, Defendants should be estopped from arguing that the Settlement Funds are property of the bankruptcy estate as they never disclosed the funds or account as an asset in the bankruptcy matter, a fact with which Defendants agree.  Complaint ¶¶ 36-37; Defendants' Memorandum of Law dated July 3, 2020 ("Def. Mem.") FN 5.  *See Robinson v. Concentra Health Servs., Inc.,* 781 F.3d 42, 45 (2d Cir. 2015) ("A party invoking judicial estoppel must show that (1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted by the first tribunal in some manner . . . .").  Despite having been on notice of the Settlement Fund for much of the duration of the bankruptcy proceedings (and arguably before), Defendants never amended their schedules or attempted to put

the Court or other interested parties on notice, and the Settlement Funds were *still* not properly disclosed as an asset pursuant to § 521 at the time the Court confirmed the Chapter 11 Plan on May 18, 2020.  *See* Bankr. Dkt. No. 583.   A court's confirmation of debtor's Chapter 11 plan constitutes "adoption of a party's position" for purposes of judicial estoppel.  *Lawski v. Frontier Ins. Grp., LLC (In re Frontier Ins. Grp.)*, 585 B.R. 685, 703 (Bankr. S.D.N.Y. 2018).

However, it appears that Defendants believe that by now admitting their omission in the context of this adversary proceeding, they are somehow absolved from their legal obligations.  *See* Def. Mem. FN 5.  *But see* 11 U.S.C. § 521(a)(1)(B)(i), (iii) (requiring debtor to "file . . . a schedule of assets and liabilities . . . and a statement of the debtor's financial affairs); *see also Romeo v. FMA Alliance, Ltd.*, No. 15-cv-6524 (ADS)(ARL), 2016 WL 3647868, at *5 (E.D.N.Y. June 30, 2016) (a debtor is under a continuing duty to disclose assets that accrue between the filing of the bankruptcy petition and the closing of the bankruptcy case); *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 52 (Bankr. S.D.N.Y. 1999) "[A]ll assets of the debtor . . .  are assets of the bankruptcy estate that *must* be scheduled for the benefit of creditors.") (emphasis added).  Defendants have provided no support for this contention.  Indeed, the *only* reason the Settlement Funds were brought to light in the bankruptcy proceedings was due to EEOC's own actions in complying with the terms of the Consent Decree.

Further, "[b]efore judicially estopping a litigant, a court must inquire into whether the particular factual circumstances of a case 'tip the balance of equities in favor' of doing so." *Clark v. All Acquisition LLC*, 886 F.3d 261, 266-67 (2d Cir. 2018) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 752 (2001)). To the extent there remain factual issues surrounding Defendants' continued and knowing failure to account for the Settlement Funds as estate

property in the bankruptcy proceedings, a dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) would be inappropriate.

Accordingly, EEOC has sufficiently alleged that Defendants took the position in the bankruptcy proceeding that the Settlement Funds were *not* an asset of the bankruptcy estate and are therefore now estopped from asserting in this adversary proceeding that the Settlement Funds are actually property of the bankruptcy estate.

## III.    DEFENDANTS DO NOT HAVE A LEGAL OR EQUITABLE INTERST IN THE SETTLEMENT FUNDS SUCH THAT THEY ARE PROPERTY OF THE ESTATE

Section 541(a) of the Bankruptcy Code provides that, with certain exceptions, a debtor's estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."   Section 541(b)(1) clarifies that "[p]roperty of the estate does not include . . . any power that the debtor may exercise solely for the benefit of an entity other than the debtor."   Section 541(d) further exempts from property of the estate any equitable interest in property that the debtor does not hold, such as the equitable interest in property held in trust for another.   The EEOC has sufficiently alleged facts, supported by the operative documents attached as Exhibits A and B to the Complaint, that plausibly give rise to a declaration that the Defendants have no legal or equitable interest in the Settlement Funds and they are thus excluded as property of the bankruptcy estate.

### A.  The Settlement Funds are Compromised Solely of Insurance Proceeds

EEOC sufficiently alleges that the Settlement Funds were paid for entirely with insurance proceeds paid directly from Chubb Insurance and should therefore be excluded from property of the estate.  Complaint, ¶ 27; Ex. B.  As an initial matter, to the extent there exist any factual issues with respect to this allegation, EEOC is entitled to conduct discovery or provide additional

factual support for its allegation,[2] thus dismissal under Fed. R. Civ. P. 12(b)(6) is inappropriate. However, the allegation that the Settlement Funds were funded solely with insurance proceeds, taken as true for purposes of this motion, plausibly supports a declaration that the Settlement Funds do not constitute estate property.  Complaint ¶¶ 27, 52-55.

Contrary to Defendants' blanket assertion, it is not black letter law that any and all insurance proceeds are automatically deemed property of the bankruptcy estate.  Def. Mem. FN 5.  Rather, "the question of whether the proceeds [of an insurance policy] are property of the estate must be analyzed in light of the facts of each case."  *See Ochs v. Lipson (In re First Cent. Fin. Corp.)*, 238 B.R. 9, 17 (Bankr. E.D.N.Y. 1999). "The overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on the claim."  *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 56 (5th Cir. 1993).  "[W]hen the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate."  *Id.; see also In re First Cent. Fin. Corp.*, 238 B.R. at 13 (proceeds of a D&O policy were not property of the corporate bankruptcy estate because the corporate debtor was not the beneficiary of such policy). For purposes of this analysis, the "type of insurance at issue is critical for determining whether insurance policy proceeds are included within the estate of the insured/debtor."  *Landry v. Exxon Pipeline Co. Mendoza Marine, Inc.*, 260 B.R. 769, 786 (Bankr. M.D. L.a. 2001).

It is unclear whether Defendants dispute the factual allegation that the Settlement Funds are comprised of insurance proceeds, or whether they admit it is and rely on their blanket

---

[2] For example, EEOC will attest that Exhibit B to the Complaint was provided by Defendants to EEOC in or around November 2018 as the "notice and proof of payment" of the monetary relief pursuant to Section VII(B)(1). of the Consent Decree.  Additionally, EEOC is entitled to conduct discovery regarding the relevant insurance policy, which has not been produced to date, and the facts and circumstances regarding Defendants' insurance claim.

assertion that even if it is, under no circumstances can insurance proceeds become property of the estate.  Def. Mem. FN 5 ("That the Disputed Funds in the Account *may* initially have been derived from a payment to one of Defendants by its insurance carrier is equally irrelevant . . . .") (emphasis added).  The cases cited by Defendants, however, are inapplicable because they involve a scenario where the intended beneficiary of the insurance proceeds was the debtor itself, therefore making the insurance proceeds property of the debtor's bankruptcy estate.  *See Bradt v. Woodlawn Auto Workers, F.C.U.*, 757 F.2d 512, 515-16 (2d Cir. 1985) (insurance payment covering repair of automobile that was property of the debtor/insured was also estate property); *In re Pied Piper Casuals, Inc.*, 50 B.R. 549 (Bankr. S.D.N.Y. 1985).

But, "[t]he owner of an insurance policy cannot obtain greater rights to the proceeds of that policy . . . by merely filing a bankruptcy petition."  *See In re Denario*, 267 B.R. 496, 499 (Bankr. N.D.N.Y. 2001) (internal quotations and citation omitted).  It is significant, then, that *but for* the EEOC's lawsuit in the Western District of New York and subsequent Consent Decree settling those claims, Defendants would never have submitted a claim to Chubb Insurance and would never have been in possession of the Settlement Funds in the first place.  Defendants are correct that the Consent Decree by its express terms did not require them to fund the settlement with insurance proceeds; however, that is what they chose to do and now that insurance claim and transaction are entirely germane to disposition of the Settlement Funds in this action.

Although the insurance policy at issue here remains an issue of fact appropriate for discovery, one could presume that Defendants filed their claim for the settlement of EEOC's discrimination claims pursuant to an employment practices liability policy with Chubb Insurance.  *See Landry*, 260 B.R. at 786; *see also In re. First. Cent. Fin. Corp.*, 238 B.R. at 17 (considering "the totality of the factual setting" to determine whether insurance proceeds

constituted estate property).  It would therefore be astonishing if Chubb Insurance was not aware

of the structure of the Consent Decree and paid the claim directly to Defendants without the

terms of the insurance policy itself requiring, or at least the intent, that Defendants hold the funds

only for the benefit of the EEOC Claimants, who would be the only beneficiaries under the terms

of a liability insurance policy.  *Id.* ("In the liability insurance context the debtor has no

cognizable claim to the proceeds paid by an insurer on account of a covered claim.  The proceeds

are paid to the victim of the insured's wrongful act.").  *Cf. In re Edgeworth*, 993 F.2d at 56

("Examples of insurance policies whose proceeds are property of the estate include casualty,

collision, life, and fire insurance policies in which the debtor is a beneficiary.").  Again, these

circumstances seem to remain an issue of fact that may require further investigation in this

adversary proceeding.

Despite this, in attempting to show that EEOC cannot even state a plausible claim for

relief at this stage, Defendants inexplicably argue that the EEOC Claimants would get a

"windfall" at the expense of "other creditors" if their monetary settlement is distributed to them

instead of pro rata to all of Defendants' creditors.  Def. Mem. FN 5.  Defendants, however,

provide no support for their position that Defendants or estate creditors have any right to

insurance proceeds specifically paid to settle employment discrimination claims and expressly

intended to benefit those victims.  Indeed, should the Settlement Funds be deemed estate

property, the only parties subject to a windfall are the creditors.  *See Landry*, 260 B.R. at 786-87.

The Fifth Circuit in *Landry* provided a comprehensive analysis of this issue and rationalized that

it is "untenable" to allow any creditor with claims not covered under the terms of a liability

insurance policy the benefit of those insurance proceeds.  The Court further explained that

> [w]hen a covered claim arises, the injured debtor may have an interest, albeit a
> self-serving interest, in having a third party (the insurance company) pay for its

> wrongdoing, but this is not a legal or equitable interest in the property used to pay the claim. The interest the insured debtor has is the contractual right to have its own assets protected from exposure by means of the insurance coverage, according to the terms of the contact. *Id.* at 787.

Given that Defendants never suffered a loss because Chubb Insurance paid the claim at issue in this case and directly funded the Settlement Fund in November 2018 with the intent that the funds be paid to the EEOC Claimants pursuant to the express terms of the Consent Decree, it is even more untenable that Defendants' creditors, who were not victims of Defendants' unlawful discriminatory employment practices, should somehow receive a portion of those insurance proceeds. Accordingly, EEOC has more than plausibly alleged entitlement to a declaration that the Settlement Funds are not property of the estate because they are insurance proceeds for the benefit of the EEOC Claimants to which Defendants have no cognizable legal claim.

## B. The Settlement Funds Constitute Trust Funds

EEOC has also plausibly alleged that it is entitled to a declaration that the Settlement Funds are not property of the estate because they constitute funds held in trust and Defendants may only exercise their limited power as an agent-trustee solely for the benefit of the EEOC Claimants pursuant to § 541(b)(1)[3] and (d). *See generally, Begier v. I.R.S.*, 496 U.S. 53, 59

---

[3] While Defendants' footnote implies that the Advisory Committee Notes state that Section 541(b)(1) covers *only* "power of appointment," in fact, this is provided as only one example: "Subsection (b) excludes from property of the estate any power, *such as* a power of appointment, that the debtor may exercise solely for the benefit of an entity other than the debtor." *Id*. (emphasis added). Indeed, funds held in bank accounts for the benefit of another are regularly found to be excluded from the estate under §541(b)(1). *See, e.g.*, *Yonkers Bd. of Educ. v. Richmond Children's Ctr., Inc.*, 58 B.R. 980, 982 (S.D.N.Y. 1986) (where debtor cared for special needs children and received payments from the New York State Department of Education to pay to the Yonkers school district for educating those children, finding those funds were not property of debtor's estate as "the services provided by Yonkers were solely for the benefit of the children residing in the intermediate care facility, and not for the facility itself"); *In re E.D.B. Constr. Corp.*, No. 11-76129-REG, 2013 WL 6183849, at *3 (Bankr. E.D.N.Y. Nov. 26, 2013) (when discussing bank account, citing the text of § 541(b)(1) to support that it "is well settled law that . . . trust assets . . . do not become property of the debtor's estate"); *In re Stein & Day Inc.*, 80 B.R. 297,

(1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'").  *See also In re Joliet-Will Cty. Cmty. Action Agency*, 847 F.2d 430, 432 (7th Cir. 1988) (Posner, J.) (pursuant to 11 U.S.C. § 541(b) and (d), if a debtor "lacks beneficial title" and "is merely an agent for the disbursal of funds belonging to another," then such funds would not be assets of the bankruptcy estate).

> i. *The Settlement Funds are not property of the estate because they are held in an express trust for the benefit of the EEOC Claimants*

Under New York law, "[a] valid express trust requires (1) a designated beneficiary, (2) a designated trustee, (3) a fund or other property sufficiently designated or identified to enable title of the property to pass to the trustee, and (4) actual delivery of the fund or property, with the intention of vesting legal title in the trustee."  *In re Doman*, 68 A.D.3d 862, 890 N.Y.S.2d 632, 634 (2d Dep't 2009).  *See In re Matamoros*, 605 B.R. 600, 608 (Bankr. S.D.N.Y. 2019) (quoting *Caballero v. Anselmo*, 720 F. Supp. 1088, 1095 (S.D.N.Y. 1989)).  An express trust may be created "orally or in writing, and no particular form of words is necessary."  *Id.* (quoting *Caballero*, 720 F. Supp. at 1095).[4]  A trust may arise by implication "from the acts or words of the person creating it." *Caballero*, 720 F. Supp. at 1096 (citing *Wadd v. Hazelton*, 137 N.Y. 215, 219 (1893)).  Here, the inquiry is not whether the Settlement Account is "trust account per se,"

---

303 (Bankr. S.D.N.Y. 1987) (quoting § 541(b)(1), and finding that funds did not become part of debtor's estate because debtor could only assert power over the funds for the benefit of another).

[4] Defendants argue that specific language is required to create a trust under N.Y. E.P.T.L. §7-1.17 (McKinney 2019).  *See In re Klosinski*, 192 Misc.2d 714, 717 (Sur. Ct. Kings Cty. 2002). However, that statute only applies to "lifetime trusts," which this account is not.  *See* N.Y. E.P.T.L. § 1-2.20 (setting forth the definition of a "lifetime trust" and its exclusions).  Lifetime trusts are "estate planning instruments . . . essentially will substitutes," which is not applicable here.  *See Estate of Arthur Solomon*, 1997 NYLJ LEXIS 2064, at *5-*7 (Sur. Ct. Kings Cty. 1997).  *See also* McKinney's Supplementary Practice Commentaries, § 207 (explaining that Surrogate's Court has jurisdiction over *inter vivos*, or "lifetime," trusts).

but whether the Settlement Funds are "trust funds."  *See Gowan v. Patriot Group, LLC (In re Dreier)*, 452 B.R. 391, 420 (Bankr. S.D.N.Y. 2011).  Indeed, the legislative history of § 541(d) supports EEOC's claim:

> Situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in a constructive trust for the person to whom the bill was owed.  H.R.Rep. No. 95-595, 95th Cong. 1st Sess. (1977) 368; Sen.Rep. No. 95-989, 95th Cong.2d Sess. 82.

The Consent Decree, by its express terms, establishes that the Settlement Funds constitute trust funds for the benefit *only* of the EEOC Claimants.  The Consent Decree states, "Within twenty-one (21) days of the Effective Date, Defendants will pay FOUR HUNDRED AND TWENTY-FIVE THOUSAND DOLLARS ($425,000) in monetary relief into a settlement fund and provide notice and proof of payment to the EEOC."  Complaint ¶ 21; Ex. A, Section VII(B)(1).  Defendants do not dispute the existence of the Settlement Funds, or that pursuant to the Consent Decree, they created an account in the exact amount of $425,000 on November 18, 2018 and provided proof to the EEOC.  Complaint ¶¶ 27-28; Ex. B.[5]  The Consent Decree states further, "The monetary relief *will be* distributed to Claimants allegedly subjected to unlawful employment practices . . . ."  Complaint ¶ 24; Ex. A., Section VII(B)(1) (emphasis added).  Defendants take issue that the exact identities of the EEOC Claimants were not known at the

---

[5] Defendants agreed in the Chapter 11 Plan that the Settlement Account was opened and funded in the amount of $425,000 "pursuant to the Consent Decree."  *See* Bankr. Dkt. No. 560 (definition of "Settlement Fund" and Section 8.8).  To the extent any doubt remains as to the identity of the res at issue, at some point after the Plan Confirmation, someone renamed the Settlement Account "Settlement Funds Escrow Account" with M&T Bank.  *See* Bankr. Dkt. No. 637, at 71.  Fact discovery will show that prior account statements for M&T account -7673 do not include this label.  That someone labeled the account an "escrow account" is of no real moment because the legal status of the Settlement Funds is determined by the terms of and intent embodied in the Consent Decree.

time the Consent Decree was entered, but fail to provide any support for their arguments that the

EEOC Claimants must have been identified by name as of September 10, 2019 as opposed to

their identification by class, in order to be considered "beneficiaries" pursuant to trust law.[6]  Def.

Mem. p. 11; Complaint Ex. A, Sections I(B)(3), II(A) and (B), and VII(B).  *See In re Brunswick*

*Hosp. Center Inc.*, 156 B.R. 896, 901-02 (Bankr. E.D.N.Y. 1993) (provisions of trust agreement

stating that the fund could only be used to satisfy malpractice claims indicated that malpractice

claimants, even though unknown, were proper beneficiaries of trust fund under New York law).

Indeed, Defendants do not appear to factually dispute the existence of a class of Absolut

employees who i) had a total or partial disability (2(a)); ii) requested FMLA or medical leave

(2(b)) or; iii) who requested accommodation on the basis of pregnancy, childbirth, or related

medical condition (2(c)) and who Absolut had terminated for whom the monetary relief

described in Section VII(B) was expressly intended.  Defendants also argue, with no legal

support, that they could not have been "trustees" because the funds were "conveyed by AFM as

settlor to AFM as trustee by moving its own money from one pocket to another."  Def. Mem. at

p. 10.  The factual premise behind Defendants' argument is simply not true.  As clearly alleged

in the Complaint and discussed in detail, *infra* Section III(A), the Settlement Funds were never

comprised of AFM's "money," but rather was funded directly by the Chubb Insurance policy

proceeds.  Complaint ¶ 27; Ex. B.  Furthermore, by the terms of the Consent Decree, all that was

---

[6] To the extent relevant to this action, fact discovery will show that the reason the specific identities of the EEOC Claimants were not known as of the date of execution of the Consent Decree is because EEOC had to wait for Defendants to provide the employment information necessary for it to determine the exact identities of the beneficiaries.  Defendants allege, with no basis, that EEOC "refused" to comply with the Consent Decree's timelines; however, the Consent Decree permitted EEOC until April 2020 to submit its final list of EEOC Claimants.  As of December 19, 2019, the date EEOC sent the list of claimants to Defendants, Defendants had not taken *any* position in the bankruptcy proceedings as to the legal status of the Settlement Funds, nor had they even so much as given notice to the Court or any party as to the *existence* of the Settlement Funds by this date.

intended for Defendants to do in their role as "trustee" was hold the funds in a separate account for the benefit of the EEOC Claimants, which they did.[7]  Complaint ¶¶ 23-24; Ex. A, Section VII(B)(1).  *Cf. In re Gagliardi*, 55 N.Y. 109, 113-14 (1982) (pursuant to EPTL § 7-1.2 a passive trust was created whereby the legal and equitable interest in the trust property vested in the beneficiaries when the instrument did not allocate any functions to the trustee).   Accordingly, EEOC has pleaded sufficient facts to plausibly establish the four elements of a trust: (1) the EEOC Claimants as the designated beneficiaries, (2) the Defendants as the trustees, (3) the $425,000 Settlement Funds as the identifiable res, and (4) actual distribution of the Settlement Funds into the Settlement Account.  *Id.; see T&B Scottdale Contractors, Inc. v. United States*, 866 F.2d 1372, 1376 (11th Cir. 1989) (contracts that expressly stated that funds held in a bank account in debtor's name were to be used to pay third parties established that the funds were not property of the estate under § 541); *Dzikowski v. NASD Regulation, Inc.,* 247 B.R. 867, 870 (S.D. Fla. 2000), *aff'd sub nom. In re Scanlon*, 239 F.3d 1195 (11th Cir. 2001) (trust account was established to satisfy a settlement agreement, not to benefit the debtor, and therefore was not property of debtor's estate).

        That the Consent Decree does not explicitly use the words "trust," "trustee," or "beneficiary" is not fatal to a finding that a trust was created for purposes of the exception under § 541(d).  Under New York law, there must be either "an explicit declaration of trust, or circumstances which show beyond reasonable doubt that a trust was intended to be created."  *Agudas Chasidei Chabad of United States. v. Gourary*, 833 F.2d 431, 434 (2d Cir. 1987).  *See*

---

[7] Fact discovery will show that the Consent Decree was structured to have Defendants hold the Settlement Funds because EEOC policy restricts EEOC from holding funds for claimants and directly issuing settlement checks.  Further, many of the Settlement Funds constituted back wages, which Absolut was required to pay directly to the EEOC Claimants and issue IRS Form W-2s.  *See* Ex. A, Section VII(B)(4).

*also Martin v. Funk*, 75 N.Y. 134, 141 (1878) ("No particular form of words is necessary to constitute a trust, while the act or words relied upon must be unequivocal, implying that the person holds the property as trustee for another.").  Therefore, when determining whether contracting parties have established any agency or trust relationship, courts will often look to the "true character of [the parties'] relationship rather than by the formal language of a contract." *See LFD Operating, Inc. v. Ames Dep't Stores, Inc.*, No. 02 Civ. 6271, 2004 WL 1948754, at *3 (S.D.N.Y. Sept. 1, 2004).   Further, should the Court find the Consent Decree ambiguous, it may consider extrinsic evidence to determine the parties' intent to grant the equitable and legal interest in the Settlement Funds to the EEOC Claimants.  *See Brunswick*, 156 B.R. at 902 ("[T]he surrounding circumstances and extrinsic evidence indicate an intent by the parties to designate medical malpractice claimants as beneficiaries of the Trust Fund."); *In re Piel*, 10 N.Y.3d 163, 166 (2008); *see also In re Hanlon*, 169 A.D.3d 1039, 1041 (2d Dep't 2019) (holding that extrinsic evidence should be considered after a trust instrument referenced "specific instructions," but did not detail the grantor's expectations).

"In distinguishing whether defendants intended to create a trust or a debt, 'the test is whether they intend[ed] for the person receiving the money to have a beneficial, as well as a legal, interest in it.'"  *In re Dreier*, 452 B.R. at  421-22, quoting 1 AUSTIN W. SCOTT, WILLIAM F. FRATCHER, & MARK L. ASCHER, SCOTT AND ASCHER ON TRUSTS (5th ed. 2007), § 2.3.8.1.  Evidence of such intent may include the segregation of funds into a separate bank account for a specific use and distribution.  *See In re Ames Dep't Stores, Inc.*, 274 B.R. 600, 624 (Bankr. S.D.N.Y. 2002); *Superintendent of Ins. v. First Cent. Fin. Corp. (In re First Cent. Fin. Corp.)*, 269 B.R. 481, 495-96 (Bankr. E.D.N.Y. 2001) (citing *In re Shulman Transp. Enter., Inc.*, 744 F.2d 293, 295 (2d Cir. 1984) (observing that the segregation of alleged

trust funds is a factor that courts consider in distinguishing a trust and a debt in bankruptcy); *In re Einhorn,* 59 B.R. 179, 184 (Bankr. E.D.N.Y. 1986) (finding that crucial factor in determining whether a trust relationship is created is the duty to segregate funds); *see also In re Columbia Gas Sys.*, 997 F.2d 1039, 1054 (3d Cir. 1993) ("[C]ommingling of the funds and the statutory requirement that interest be paid to be indicia of a debtor-creditor, rather than a trustee-beneficiary, relationship."); *see also In re Penn Cent. Transp. Co.*, 486 F.2d 519, 524 (3d Cir. 1973) ("[G]enerally commingling indicates a debtor-creditor relationship and not a trust . . . ."). "Further, pursuant to New York law, if there is no distinct trust fund but merely a general obligation to ultimately pay a sum of money, then there is no trust, but only a debt." *In re Cabrini Medical Center*, Bankr. No. 09-14398 (AJG), 2012 WL 527711, at *4 (Bankr. S.D.N.Y. Feb. 16, 2012) (internal quotations and citations omitted).

Here, Defendants' own actions with respect to the Settlement Funds belies their arguments after the fact that a trust relationship was not intended.  Defendants expressly agreed to create a separate fund for the $425,000 monetary relief, and in fact did so.  Complaint ¶¶ 23, 28; Exs. A and B.  Although Defendants now argue that there were no restrictions placed upon these funds, which is not supported by the language of the Consent Decree, the reality is that since the inception of the Settlement Account in November 2018, Defendants have not commingled the Settlement Funds or used them for some other purpose (*see* Bankr. Dkt. No. 637, at 71); behavior which, even in the absence of talismanic language, is consistent with an intention to merely hold these funds in "trust" for the sole benefit of the EEOC Claimants.  *See Brunswick*, 156 B.R. at 903 (surrounding circumstances that support a finding that an account was a "trust" for purposes of whether it was property of the bankruptcy estate include that the funds were segregated and debtor never invaded the account for purposes other than to pay

malpractice claims).  Further, the Consent Decree provides *no* scenario in which the Settlement Funds would ever revert to Defendants—even if the entire amount was not distributed to an EEOC Claimant, the remainder would be "remitted to a 501(c)(3) charitable organization approved by the EEOC whose mission is to advance the opportunities of women and/or individuals with disabilities in employment."  *Id.* VII(B)(6).

Accordingly, the express terms of the Consent Decree, which gives the EEOC sole discretion over the distribution of the funds solely for the benefit of the EEOC Claimants, coupled with the actions of the Defendants and the EEOC in the creation and maintenance of the Settlement Funds and Settlement Account, plausibly supports the creation of a trust or agency relationship.  Further, at the very least, sufficient evidence exists to support factual inquiry into the parties' relationship and intent whereby Defendants would hold the Settlement Funds temporarily.  Accordingly, Defendants' motion to dismiss should be denied.

> ii.    *The Settlement Funds are not property of the estate because they are held in constructive trust for the benefit of the EEOC Claimants*

EEOC has pleaded facts that plausibly support a declaration that the Settlement Funds are not property of the estate because they are held in a constructive trust pursuant to § 541(d). Should the Court determine that the Settlement Funds do not constitute express trust funds pursuant to the written Consent Decree, it nevertheless may impose a constructive trust pursuant to its equitable powers because Defendants were only acting as a conduit to transfer funds from Chubb Insurance to the EEOC Claimants.  *See Corporate Fin. v. Fidelity Nat'l Title Ins. Co. (In re Corporate Fin., Inc.)*, 221 B.R. 671, 682 (Bankr. E.D.N.Y. 1998) ("As a court of equity, the bankruptcy court is permitted to look beyond the form to the substance of a transaction in order to determine the true nature of a transaction as it relates to the rights of parties against a debtor's estate.") (internal quotations and citations omitted).  A constructive trust "is the formula through

which the conscience of equity finds expression." *Simonds v. Simonds*, 45 N.Y.2d 233, 241

(1978) (holding that payment of insurance funds to the decedent's second wife, and not his first,

constituted unjust enrichment).  In New York, a party seeking imposition of a constructive trust

generally must establish (1) a confidential or fiduciary relationship; (2) an express or implied

promise; (3) a transfer of the subject res made in reliance of that promise; and (4) unjust

enrichment.  *In re Singh*, 434 B.R. 298, 306 (Bankr. E.D.N.Y. 2010); *In re Matamoros*, 605 B.R.

at 608 (quoting *United States v. Coluccio*, 51 F.3d 337, 340 (2d Cir. 1995)).  However, the

imposition of a constructive trust should not be "rigidly limited" and a constructive trust may be

imposed even in the absence of some of these factors.  *Singh*, 434 B.R. at 306 ("Although these

factors provide important guideposts, the constructive trust doctrine is equitable in nature and

should not be rigidly limited.") (internal quotations and citations omitted); *Entegra Power Grp.*

*v. Dewey & Leboeuf LLP (In re Dewey & Leboeuf LLP)*, 493 B.R. 421, 431 (Bankr. S.D.N.Y.

2013) (noting that imposition of a constructive trust should not be foreclosed in the absence of an

element).  "It is the final factor—unjust enrichment—that lies at the heart of the remedy."  *Singh*,

434 B.R. at 306, internal quotations and citations omitted, and cases cited.  Unjust enrichment is

satisfied when a party holds property "under such circumstances that in equity and good

conscience he ought not to retain it." *Simonds*, 45 N.Y.2d at 242 (citing *Miller v. Schloss*, 218

N.Y. 400, 408-09 (1916)).

Defendants argue that the Court cannot impose a constructive trust because the existence

of the Consent Decree precludes a finding of unjust enrichment.  Def. Mem. FN 7.  However, at

the same time, Defendants also admit that Defendants' payment obligations to the EEOC

Claimants "would be enforceable under applicable nonbankruptcy law." *Id.* at p. 1.  In seeking a

constructive trust, EEOC is therefore not attempting to enforce an unenforceable contract, but

rather a declaration that, in equity, the Settlement Funds belong to the EEOC Claimants and not the creditors because Defendants understood the $425,000 in the Settlement Account was intended for the EEOC Claimants and knew that the EEOC could not hold the funds itself.  *See Geltzer v. Balgobin (In re Balgobin)*, 490 B.R. 13, 23 (Bankr. E.D.N.Y. 2013); *In re Dewey & Leboeuf LLP*, 493 B.R. 421, (Bankr. S.D.N.Y. 2013) (regardless of the terms of the contract at issue, New York's rules of professional responsibility imposed a fiduciary duty on debtors that could not be avoided by contract to return unearned portions of their retainer).  Thus, EEOC has sufficiently alleged that Defendants have acted inequitably.  *Cf. id.* at 24 (noting as relevant to the analysis that party seeking imposition of constructive trust did not claim the debtor attempted to repudiate an alleged agreement, nor any overreaching or inequitable behavior by the debtor).

Defendants also argue that a constructive trust cannot be imposed because the creditors will be harmed.  This argument assumes that Defendants' general creditors are on the same footing as the EEOC Claimants and that both are equally entitled a share of the Settlement Funds.  *See, e.g.*, *In re Corporate Financing, Inc.*, 221 B.R. at 682 (application of § 541(d) would create an inequitable result among *similarly situated* creditors).  However, there is no support for such an argument.  Even assuming the estate holds bare legal title to the Settlement Fund and the EEOC Claimants could be considered general, unsecured creditors of the estate, the EEOC has clearly stated a claim that the Settlement Funds were earmarked only for distribution to the EEOC Claimants and no other entity, and it cannot reasonably be found that the relief EEOC seeks would come from the pockets of the creditors.  *Cf. Rosen v. Chowaiki & Co. Fine Art (In re Chowaiki & Fine Art Ltd.)*, 593 B.R. 699, 721 (Bankr. S.D.N.Y. 2018), citing *In re Dreier*, 2016 WL 3920358, at *7 (S.D.N.Y. July 15, 2016) ("Equity is not served by disadvantaging one set of victims in order to restore another, whether the only source of assets is

20

a common pool.").  Here, as discussed at length, *infra* Section III(A), the Settlement Funds are comprised solely of insurance proceeds paid and set aside *pre-petition* in an undisputed, segregated bank account.  *See In re Dewey & Leboeuf LLP*, 493 B.R. at 432 (imposition of a constructive trust ordinarily requires tracing of the funds); *Cadle Co. v. Mangan (In re Flanagan)*, 503 F.3d 171, 185 (2d Cir. 2007) ("The proper application of the earmarking doctrine depends not on whether the debtor temporarily obtains possession of [funds], but instead on whether the debtor is obligated to use those funds to pay an antecedent debt.").  Indeed, creditors who were not claimants under the Chubb Insurance policy would undoubtedly be unjustly enriched if they were permitted to receive those insurance proceeds.  *See Landry*, 260 B.R. at 787.  Courts may impose a constructive trust where a debtor's role was simply to act as a conduit, transferring funds from one party to another.  *See Yonkers Bd. of Educ. v. Richmond Children's Ctr., Inc.*, 58 B.R. 980 (S.D.N.Y. 1986); *In re Stein & Day Inc.*, 80 B.R. 297, 303-04 (Bankr. S.D.N.Y. 1987) (noting that "[f]unds which are in the possession of the debtor may . . . excluded from the property of the estate," where "the debtor transfers the funds as a conduit between an original transferor and an ultimate transferee").

Accordingly, EEOC has set forth facts that, at this stage, plausibly support imposition of a constructive trust.

### C.  DEFENDANTS HOLD THE SETTLEMENT FUNDS AS EEOC'S AGENT

Defendants' actions also plausibly support a finding that Defendants acted as agents for the EEOC.  "An essential characteristic of an agency relationship is that the agent acts subject to the principal's direction and control."  *In re Shulman Transp. Enter., Inc.*, 744 F.2d at 295.  Here, Defendants can only initiate a transfer of the Settlement Funds from the Settlement Account subject to EEOC's direction and control—the EEOC tells Defendants the name and address of

each Claimant to be paid, how much they are to receive, and whether each amount constitutes back pay or compensatory damages, which governs Defendants' tax reporting on those payments.  *Cf. id.* (factors found by the court to contra-indicate a principal-agent relationship included the absence of a requirement to segregate the funds; no provision restricting the funds' use; and no requirement that the alleged agent/debtor had to obtain approval from the principal before extending credit); *In re First Cent. Financial Corp.*, 269 B.R. 481, 497 (Bankr. E.D.N.Y. 2001) ("Under the Agreement, [debtor] does not act at FCIC's direction and control, either in applying for a tax refund, or in the handling of the refund monies once received.").

Defendants admit that "[t]here is no dispute that, 'if property is in the debtor's hands as agent, the property or proceeds therefrom is not treated as property of the debtor's bankruptcy estate."  Def. Mem. at 13 (quoting *In re Ames Dep't Stores, Inc.*, 274 B.R. at 614).  However, Defendants cite a portion of *In re Ames*, which quotes *SEC v. Am. Bd. of Trade, Inc.*, 654 F. Supp. 361, 366 (S.D.N.Y. 1987), to claim that because Defendants hold bare legal title to the Settlement Funds, an agency analysis cannot apply here.  However, Defendants conveniently omitted the last line of this quoted section, which in full, reads:

> The distinction between a trustee and agent lies in the element of control and the extent of disposition of the property. A party who merely has possession of property of another and, although authorized to deal with that property, is subject to control by its owner, is an agent of the owner. A trustee, however, holds legal or equitable title to the property placed in his possession and may or may not be subject to the beneficiary's control. *An agent-trustee is one who holds a title but is also subject to control by the beneficiary.*

*In re Ames*, 274 B.R. at 617 (emphasis added) (quoting *S.E.C. v. Am. Bd. of Trade, Inc.,* 654 F.Supp. at 366).  Even if Defendants hold bare legal title to the Settlement Funds, they do so only as an agent-trustee for the benefit of EEOC.

## IV.    INJUNCTIVE RELIEF SHOULD BE GRANTED TO PREVENT DEFENDANTS' DIMINISHMENT OF THE SETTLEMENT FUNDS

The Court should also grant the EEOC's request for an order enjoining Defendants, and any other person or entity, from transferring, depleting or dissipating the Settlement Funds for any purpose other than those permitted by the Consent Decree.  The Court can grant a temporary injunction when a party shows that "it will suffer irreparable harm absent injunctive relief and either (1) that it is likely to succeed on the merits of the action, or (2) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation . . . ." *Mullins v. City of New York,* 626 F.3d 47, 53 (2d Cir. 2010) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.,* 598 F.3d 30, 34-35 (2d Cir. 2010)). A mandatory preliminary injunction should be granted "upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Citigroup Global Mkts., Inc.*, 598 F.3d at 35 n.4.  The district court has "wide discretion" in determining whether or not to grant a preliminary injunction.  *White v. Clark*, No. 12-CV-0986, 2012 WL 5877160, at *12 (N.D.N.Y. Nov. 20, 2012) (citing *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 511 (2d Cir. 2005)).

For the reasons set forth above, the EEOC has established that it will be successful on the merits for its claim for declaratory relief that the Settlement Funds are not property of the estate. Further, the EEOC Claimants will suffer irreparable harm if the Settlement Funds are depleted or diminished—as Defendants are in bankruptcy and their assets are being distributed, the EEOC Claimants will have no recourse to recoup any funds lost from the Settlement Funds if they are distributed to Defendants' creditors.

Defendants assert that a preliminary injunction is not necessary because the Chapter 11 Plan already enjoins Defendants from distributing the Settlement Funds.  Def. Mem. at 15.

However, the Chapter 11 Plan is apparently insufficient, because—only after the EEOC filed this adversary proceeding—Defendants modified the Settlement Account to one that charges a monthly service fee.  *See* Bankr. Dkt. No. 637, at 71 (account statement filed July 18, 2020 showing the Settlement Account in the amount of $424,992.00).  Defendants are therefor in violation of both the Chapter 11 Plan and the Consent Decree.  While the service fee is small—two dollars per month—it demonstrates that the Chapter 11 Plan is insufficient to prevent Defendants from diminishing the Settlement Funds.  Further, if Defendants believe such an order would only duplicate orders currently in place, Defendants have no ground for opposition.

For these reasons, a preliminary injunction is necessary and should be granted by the Court.

## **CONCLUSION**

For the reasons set forth above, the EEOC respectfully requests that the Court deny Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and grant the EEOC's request for a preliminary injunction, and such other and further relief as this Court may deem just and proper.  Should the Court find any deficiencies in the EEOC's Complaint, the EEOC respectfully requests leave to replead.

Dated: Central Islip, New York
      August 14, 2020

SETH D. DuCHARME
Acting United States Attorney
Eastern District of New York
610 Federal Plaza
Central Islip, New York 11722

By: __/s_____
    Megan J. Freismuth
    James R. Cho
    Assistant U.S. Attorneys
    (631) 715-7905

Megan.freismuth@usdoj.gov
James.cho@usdoj.gov